UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X
DARREN E. THOMAS and MARLENE THOMAS,

                    Plaintiff,

          -against-                          MEMORANDUM & ORDER
                                             11-CV-6084(JS)(ETB)
JOHN VENDITTO, LEONARD GENOVA,
FREDERICK P. IPPOLITO, CHRISTOPHER
GIOIA, and the TOWN OF OYSTER BAY,

                    Defendants.
--------------------------------------X
DARREN E. THOMAS,

                    Petitioner,

          -against-                          12-CV-0065(JS)(ETB)

TOWN OF OYSTER BAY, HON. JOHN
VENDITTO, and the JUDGES OF THE
DISTRICT COURT, COUNTY OF NASSAU,

                    Respondents.
--------------------------------------X

APPEARANCES
For Plaintiffs      Harry H. Kutner, Jr., Esq.
& Petitioner:       136 Willis Avenue
                    Mineola, NY 11501

For Defendants      Christopher Kendric, Esq.
& Respondents:      Goldberg Segalla LLP
                    200 Old Country Road, Suite 210
                    Mineola, NY 11501

SEYBERT, District Judge:

          Plaintiffs Darren and Marlene Thomas ("Plaintiffs")

commenced this action (11-CV-6084) on December 15, 2011, against

Defendants John Venditto, Leonard Genova, Frederick P. Ippolito,

Christopher Gioia, and the Town of Oyster Bay (the "Town" and,

collectively, "Defendants"), asserting claims under 42 U.S.C. § 1983, the New York State Constitution, and New York common law, arising out of Mr. Thomas's criminal prosecution for violating Town zoning ordinances. On January 5, 2012, Defendants removed from state court an Article 78 Petition (the "Petition") filed by Mr. Thomas seeking a writ of prohibition barring his continued prosecution in state court (12-CV-0065). On May 9, 2012, these actions were consolidated. Presently before the Court is Defendants' motion to dismiss the consolidated action and Plaintiffs' notice of motion to file an amended complaint. For the following reasons, Defendants' motion is GRANTED IN PART and DENIED IN PART, Plaintiffs' motion is DENIED, the Petition is <u>sua</u> <u>sponte</u> REMANDED to state court, and the remaining claims are STAYED pending resolution of the criminal court action.

BACKGROUND[1]

On or around March 9, 2007, Mr. Thomas, who is African American, and Mrs. Thomas, who is Puerto Rican, purchased a home at 121 Fourth Street in Hicksville, New York (the "Property"). (Compl. ¶¶ 14, 20-21.) According to the Complaint, Plaintiffs

---

[1] The following facts are drawn from the Complaint, the Petition, and the documents referenced therein, including the docket of <u>People v. Thomas</u>, No. 000022/09 (Nassau Cnty. Dist. Ct.), and are presumed to be true for the purposes of this Memorandum and Order.

were the first non-Caucasian owners of the Property. (Compl. ¶ 33.)

The Property, which is located in the Defendant Town in Nassau County, is set up as a two-family home. (Compl. ¶¶ 14-15, 31.) It has two electric meters, two doorbells, and two mailboxes, and it is listed on the tax rolls of Nassau County and the Defendant Town as a two-family home. (Compl. ¶¶ 16, 32.) The Complaint asserts that the Property has been used as a two-family home since it was erected in or around 1922--long before the enactment of the Town's zoning code (the "Town Code") in 1943. (Compl. ¶¶ 30-32.) The Property, however, is located in what is now a single-family residential zone, and the Property's certificate of occupancy provides for single-family use only. (Pet. ¶ 20.) In addition, it appears as though Plaintiffs have never sought, nor has the Town ever issued, a special use permit to use the Property as a multi-family home. (Compl. ¶ 28.)

Upon taking ownership of the Property, Plaintiffs rented the secondary suite[2] and used the rental income to pay their mortgage and property taxes. (Compl. ¶ 18.) In or around June 2008, Defendant Christopher Gioia, a Town Code Enforcement Inspector, contacted Plaintiffs and "warn[ed] them to cease

---

[2] The Complaint does not state to whom Plaintiffs rented the secondary suite--*i.e.,* a family, a couple, an individual--or the race and/or ethnicity of the tenant(s).

their use of the subject premises as a two family." (Compl. ¶ 22.) Mr. Thomas replied, stating that, according to the tax rolls, the house was a "legal two family." (Compl. ¶ 23.) His lawyer followed up in writing, on or around July 14, 2008, but Plaintiffs never received any response. (Compl. ¶¶ 24-25.)

Instead, on or around January 5, 2009, a criminal prosecution was commenced against Mr. Thomas in Nassau County District Court, charging him with two violations of the Town Code: (1) for operating a two-family home in a single-family residential zone and (2) for operating a two-family home without a proper certificate of occupancy. (Compl. ¶ 28.) Although both Mr. and Mrs. Thomas were record title owners of the Property, charges were only brought against Mr. Thomas. (Compl. ¶ 26.) Mr. Thomas was arraigned on February 9, 2009. (Kendric Decl. Ex. D, at 1.)

On or around February 28, 2011, Mr. Thomas filed a motion to dismiss the criminal court action pursuant to N.Y. PENAL LAW § 170.30(1) on the ground that it was selectively commenced against him due to racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment and the New York State Constitution. (Kendric Decl. Ex. E.)[3] Mr. Thomas asserted that the Property had previously been used as a multi-

---

[3] The motion also sought dismissal on other grounds that are not relevant here. (See generally Kendric Decl. Ex. E.)

family home by its prior Caucasian owners, and no one was ever prosecuted. He further stated that there were other homes in the neighborhood being used as multi-family homes by Caucasian families, but that none of those other owners were ever prosecuted. Thus, he argued that he was being selectively prosecuted due to his race. (Kendric Decl. Ex. E.) In support, Mr. Thomas filed a memorandum of law and supporting exhibits, as well as a reply brief with supporting papers and a sur-reply brief with additional supporting papers. (Kendric Decl. Exs. D at 1, E, F.)

In August 2011, Judge David W. McAndrews denied Mr. Thomas's motion, stating as follows:

> The Court finds that the defendant has not presented sufficient evidence to prove a conscious, intentional discrimination on the part of the Town of Oyster Bay. The defendant's contention that this case is racially motivated because he is African American and his wife is of Puerto Rican descent is not supported by anything other than defendant's self-serving affidavit.

(Kendric Decl. Ex. D at 4.) Judge McAndrews denied Mr. Thomas's motion in its entirety. (Kendric Decl. Ex. D.)

The Complaint asserts that, during the course of his criminal prosecution, which is still pending, "the defendants" have yet to disclose: (1) "how the prosecution was initiated, i.e., they have not produced a third-party complaint;" (2) "whether any of the proximate presumptive multi-family homes are

5

legal multi-family dwellings;" (3) "whether any of the proximate presumptive multi-family homeowners have been prosecuted for multi-family use;" and (4) "the complete file" on the Property. (Compl. ¶¶ 43-47.)

On or around December 6, 2011, Mr. Thomas commenced the pending Article 78 proceeding in Nassau County Supreme Court against the Town, John Venditto, and the judges of the Nassau County District Court seeking a writ of prohibition "barring his further prosecution by [the] respondents on the ground that it is racially-based selective prosecution in violation of equal protection." (Pet. ¶ 2.) Shortly thereafter, on December 15, 2011, Plaintiffs filed the Complaint in this action. The Complaint asserts four causes of action: (1) a claim pursuant to 42 U.S.C. § 1983 ("Section 1983") and the New York State Constitution for violating Plaintiffs' right to due process; (2) a claim pursuant to Section 1983 and the New York State Constitution for selective enforcement in violation of the Equal Protection Clause; (3) a claim arising under New York state common law for abuse of process; and (4) a claim arising under New York state common law for malicious prosecution. The constitutional claims are asserted against the Town pursuant to Monell v. New York City Department of Social Services, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), and all claims are

asserted against the individual Defendants in their individual and official capacities.

On or around April 4, 2012, Defendants moved to dismiss both the Complaint and the Petition for failure to state a claim pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure (Docket Entry 39), and, on May 9, 2012, the two actions were consolidated. Plaintiffs opposed the motion and filed a notice of motion to amend the Complaint on May 31, 2012. (Docket Entries 32-33.) No memorandum of law or proposed amended complaint was filed in support of the notice of motion. Both Defendants' motion to dismiss, and Plaintiffs' notice of motion to amend are pending before the Court.

## DISCUSSION

Although the Petition asks this Court to interfere with an ongoing state proceeding, neither party has addressed whether abstention is appropriate pursuant to <u>Younger v. Harris</u>, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971). Thus, before analyzing the merits of the parties' motions, the Court must determine, <u>sua sponte</u>[4], whether <u>Younger</u> bars the claims in the Petition.

---

[4] The Court may address the applicability of the <u>Younger</u> abstention doctrine <u>sua sponte</u>. <u>See</u> <u>Catlin v. Ambach</u>, 820 F.2d 588, 591 (2d Cir. 1987).

I. <u>Younger Abstention</u>

The Petition asks this Court to enjoin the continued prosecution of Mr. Thomas in state court. However, "[a]s the Supreme Court emphasized in <u>Younger v. Harris</u>, federal courts should generally refrain from enjoining or otherwise interfering in ongoing state proceedings." <u>Spargo v. N.Y. State Comm'n on Judicial Conduct</u>, 351 F.3d 65, 74 (2d Cir. 2003) (citations omitted). <u>Younger</u> abstention is mandatory when three conditions are met: "(1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims." <u>Diamond "D" Constr. Corp. v. McGowan</u>, 282 F.3d 191, 198 (2d Cir. 2002).

The Court finds that the <u>Younger</u> abstention conditions are met here. <u>First</u>, it is undisputed that the state court proceedings are still ongoing. <u>Second</u>, the State has an important interest in regulating zoning and land use. <u>See, e.g.</u>, <u>Sendlewski v. Town of Southampton</u>, 734 F. Supp. 586, 591 (E.D.N.Y. 1990) ("[T]he right of a municipality to regulate land use and enforce its regulations through criminal and civil enforcement actions implicates important state interests."); <u>see also</u> <u>Novie v. Vill. of Montebello</u>, No. 10-CV-9436, 2012 WL 3542222, at *12 (S.D.N.Y. Aug. 16, 2012) (collecting cases).

<u>Finally</u>, Mr. Thomas's criminal court action provides an adequate forum for Mr. Thomas to adjudicate his constitutional claim--and, in fact, Mr. Thomas has availed himself of that opportunity. <u>Cf.</u> <u>Spargo</u>, 351 F.3d at 79 ("The relevant question under <u>Younger</u> is whether the state's procedural remedies <u>could</u> provide the relief sought [not] . . . whether the state <u>will</u> provide the constitutional ruling which the plaintiff seeks." (internal quotation marks and citation omitted)).

Accordingly, the Court finds that it is barred under <u>Younger</u> from granting the relief Mr. Thomas seeks in the Petition.[5] "When <u>Younger</u> applies, abstention is mandatory, and its application deprives the court of subject matter jurisdiction in the matter." <u>Brims v. Ramapo Police Dep't</u>, No. 11-CV-0712, 2011 WL 7101233, at *6 (S.D.N.Y. Dec. 23, 2011) (citing <u>Colo. Water Conservation Dist. v. United States</u>, 424 U.S. 800, 816 n.22, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976); Diamond "D", 282 F.3d at 198); <u>cf.</u> <u>Gibson v. Berryhill</u>, 411 U.S. 564, 577, 93 S. Ct. 1689, 36 L. Ed. 2d 488 (1973) ("<u>Younger v.</u>

---

[5] "Despite the strong policy in favor of abstention, a federal court may nevertheless intervene in a state proceeding upon a showing of 'bad faith, harassment or any other unusual circumstance that would call for equitable relief.'" <u>Diamond</u> <u>"D"</u>, 282 F.3d at 198 (quoting <u>Younger</u>, 401 U.S. at 54). Plaintiffs bear the burden of establishing that one of these exceptions applies. <u>Id.</u> (citing <u>Kirschner v. Klemons</u>, 225 F.3d 227, 235-36 (2d Cir. 2000)). Mr. Thomas does not allege that any of these exceptions apply here, nor do the facts asserted in the Petition or the Complaint support the application of one of these exceptions.

_Harris_ contemplates the outright dismissal of the federal suit, and the presentation of all claims, both state and federal, to the state courts."). Thus, as the Court now lacks subject matter jurisdiction over the Petition, it must remand the Petition to state court. _See_ 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

## II. Defendants' Motion to Dismiss

The Court will first discuss the applicable standards of review before addressing the merits of Defendants' motion.

### A. Standard of Review

Defendants move to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure and for lack of subject matter jurisdiction under Rule 12(b)(1).

#### 1. Under Rule 12(b)(6)

In deciding Rule 12(b)(6) motions to dismiss for failure to state a claim, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." _Ashcroft v. Iqbal_, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); _accord_ _Harris v. Mills_, 572 F.3d 66, 71-72 (2d Cir. 2009). _First_, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal

conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); accord Harris, 572 F.3d at 72. Second, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss. Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556). Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. (citation omitted); accord Harris, 572 F.3d at 72.

Although both parties have attached extensive exhibits in support of and in opposition to the pending motion, in deciding a motion to dismiss, the Court is confined to "the allegations contained within the four corners of [the] complaint." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998). This has been interpreted broadly to include any document attached to the Complaint, any statements or documents incorporated in the Complaint by reference, any document on which the Complaint heavily relies, and anything of which judicial notice may be taken, see Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002); Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991), including Judge McAndrews's order denying Mr. Thomas's motion to dismiss the

criminal prosecution, see Vaughn v. Consumer Home Mortg. Co., 470 F. Supp. 2d 248, 256 n.8 (E.D.N.Y. 2007) ("[C]ourts may take judicial notice of court records."), aff'd, 297 F. App'x 23 (2d Cir. 2008); Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004) ("[W]e may also look to public records, including complaints filed in state court, in deciding a motion to dismiss.").

 2. Under Rule 12(b)(1)

 "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider affidavits and other materials beyond the pleadings to resolve jurisdictional questions. See Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008), aff'd, --- U.S. ----, 130 S. Ct. 2869, 177 L. Ed. 2d 535 (2010). The Court must accept as true the factual allegations contained in the complaint, but it will not draw argumentative inferences in favor of the plaintiff because subject matter jurisdiction must be shown affirmatively. See id.; Atlanta Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992); Shipping Fin. Servs. Corp. v.

<u>Drakos</u>, 140 F.3d 129, 131 (2d Cir. 1998). The plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. <u>Morrison</u>, 547 F.3d at 170; <u>see also</u> <u>Chayoon v. Chao</u>, 355 F.3d 141, 143 (2d Cir. 2004).

A. <u>Equal Protection</u>

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." <u>City of Cleburne v. Cleburne Living Ctr., Inc.</u>, 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985) (internal quotation marks and citation omitted). Here, the Complaint asserts that Mr. Thomas is being selectively prosecuted on account of his race in violation of the Equal Protection Clause of the Fourteenth Amendment. To plead a claim for selective prosecution, a plaintiff must allege that: (1) he was "treated differently from other similarly situated individuals," and (2) "such differential treatment was based on 'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" <u>Harlen Assocs. v. Inc. Vill. of Mineola</u>, 273 F.3d 494, 499 (2d Cir. 2001) (quoting <u>LaTrieste Rest. & Cabaret v. Vill. of Port Chester</u>, 40 F.3d 587, 590 (2d Cir. 1999)); <u>accord</u> <u>Cobb v. Ponzi</u>,

13

363 F.3d 89, 110 (2d Cir. 2004). The same standard applies whether selective prosecution is raised in a civil action pursuant to Section 1983 or as grounds for dismissing a criminal prosecution. Compare Harlan, 273 F.3d at 499 (Section 1983 action), with United States v. Stewart, 590 F.3d 93, 121 (2d Cir. 2009) (appeal of a judgment of conviction).

Defendants argue that Plaintiffs' equal protection claims must be dismissed because: (1) they are barred by collateral estoppel; (2) they are barred under the Rooker-Feldman doctrine; and (3) Plaintiffs have otherwise failed to state a claim.[6] The Court will address each argument separately.

### 1. Collateral Estoppel

Although collateral estoppel is an affirmative defense, "[d]ismissal under FED. R. CIV. P. 12(b)(6) is appropriate when . . . it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 86 (2d Cir. 2000). Under New York law,[7] collateral estoppel or issue

---

[6] The Court considers Defendants' Rooker-Feldman argument under Rule 12(b)(1), and the remainder of Defendants' arguments under Rule 12(b)(6).

[7] The Court applies New York law because in determining the preclusive effects of a state court decision, federal courts are to give a prior state court decision the same preclusive effects that the courts of that state would give it. See Kremer v.

preclusion bars a party from re-litigating an issue that (1) was actually and necessarily decided in a prior proceeding, and (2) that the party against whom the doctrine is asserted had a full and fair opportunity to litigate in the prior proceeding.  See Colon, 58 F.3d at 869; D'Arata v. N.Y. Cent. Mut. Fire Ins. Co., 76 N.Y.2d 659, 664, 563 N.Y.S.2d 24, 26, 564 N.E.2d 634, 636 (1990).  "The party asserting issue preclusion bears the burden of showing that the identical issue was previously decided, while the party against whom the doctrine is asserted bears the burden of showing the absence of a full and fair opportunity to litigate in the prior proceeding."  Colon, 58 F.3d at 869 (citing Kaufman v. Eli Lilly & Co., 65 N.Y.2d 449, 456, 492 N.Y.S.2d 584, 588, 482 N.E.2d 63, 67 (1985)).  Issue preclusion will apply only if it is quite clear that these requirements have been satisfied, lest a party be "precluded from obtaining at least one full hearing on his or her claim."  Gramatan Home Investors Corp. v. Lopez, 46 N.Y.2d 481, 485, 414 N.Y.S.2d 308, 311, 386 N.E.2d 1328, 1331 (1979).

a.   Identity of Issues

There is identity of the issues if "the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action."  Leather

_____

Chem. Constr. Corp., 456 U.S. 461, 466, 102 S. Ct. 1883, 72 L. Ed. 2d 262 (1982); Colon v. Coughlin, 58 F.3d 865, 869 n.2 (2d Cir. 1995).

v. Eyck, 180 F.3d 420, 425 (2d Cir. 1999) (quoting Parker v.
Blauvelt Volunteer Fire Co., 93 N.Y.2d 343, 349, 690 N.Y.S.2d
478, 482, 712 N.E.2d 647, 651 (1999)) (internal quotation marks
omitted).

Here, the Complaint and Mr. Thomas's motion to dismiss
the criminal prosecution both clearly raise the issue of whether
Mr. Thomas is being selectively prosecuted in violation of the
Equal Protection Clause. (See Compl. ¶¶ 48, 51, 54 (asserting a
claim under the Equal Protection Clause of the Fourteenth
Amendment arising out of "racially-based selective enforcement
of the zoning laws against the plaintiff"); Kendric Decl. Ex. E,
Notice of Motion ¶ 1 (Mr. Thomas's motion to dismiss the
criminal case "on the ground that it was selectively commenced
due to racial discrimination and is therefore a violation of the
Equal Protection clause").

Further, whether Mr. Thomas's prosecution violated the
Equal Protection Clause was actually decided by Judge McAndrews,
who denied Mr. Thomas's motion to dismiss on constitutional
grounds. (See Kendric Decl. Ex. D, at 2-5.) And, finally,
Judge McAndrews' determination was material and necessary
because "[i]f impermissible selective prosecution is
demonstrated, the indictment itself is fatally defective."
United States v. Napper, 553 F. Supp. 231, 232 (E.D.N.Y. 1982).

Plaintiffs argue that the claims are not "identical" because "neither the § 1983 civil rights aspect of the selective prosecution nor the issuance of a writ of prohibition was before the state criminal court." (Pls. Opp. 22.) This is an incorrect statement of the law.[8] Collateral estoppel "bars relitigation of an issue that was raised, litigated, and actually decided by a judgment in a prior proceeding, <u>regardless of whether the two suits are based on the same cause of action</u>." <u>Postlewaite v. McGraw-Hill</u>, 333 F.3d 42, 48 (2d Cir. 2003) (emphasis added); <u>see also</u> <u>Montana v. United States</u>, 440 U.S. 147, 153, 99 S. Ct. 970, 59 L. Ed. 2d 210 (1979) (explaining that under the doctrine of collateral estoppel "once an <u>issue</u> is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits <u>based on a different cause of action</u> involving a party to the prior litigation." (emphasis added)). Further, "[t]o meet the identity-of-issues prong of collateral estoppel, it is not necessary that the issues be exactly identical; it is sufficient

---

[8] Plaintiffs may be confusing collateral estoppel with <u>res judicata</u> (or claim preclusion). <u>Res judicata</u>, which bars any claim that could have been raised in a prior proceeding, does not apply "where the initial forum did not have the power to award the full measure of relief sought in the later litigation." <u>Burgos v. Hopkins</u>, 14 F.3d 787, 790 (2d Cir. 1994). Thus, because Mr. Thomas could not receive monetary relief from the criminal court, <u>res judicata</u> would not bar his Section 1983 claim herein. However, "[a]lthough [Mr. Thomas]'s claims are not precluded by <u>res judicata</u>, his issues may be precluded by collateral estoppel." <u>Id.</u> at 792.

that 'the issues presented in [the earlier litigation] are substantially the same as those presented by [the later] action.'" Zherka v. City of N.Y., 459 F. App'x 10, 13 (2d Cir. 2012) (alterations in original) (quoting ITT Corp. v. United States, 963 F.2d 561, 564 (2d Cir. 1992)). Therefore, Plaintiffs' argument is entirely without merit.

### b. Full and Fair Opportunity to Litigate

In determining whether the party against whom preclusion is sought was afforded a "full and fair opportunity" to litigate in the prior proceeding, a court must consider "the realities of the [prior] litigation, including the context and other circumstances which . . . may have had the practical effect of discouraging or deterring a party from fully litigating the determination which is now asserted against him." Ryan v. N.Y. Tele. Co., 62 N.Y.2d 494, 501, 478 N.Y.S.2d 823, 467 N.E.2d 487 (1984) (alteration and omission in original) (internal quotation marks and citations omitted). Here, Plaintiffs argue that Mr. Thomas did not have a full and fair opportunity to litigate his selective enforcement claim because "no hearing was ever held--no testimony nor documentary proof." (Pls. Opp. 23.) However, the lack of a full hearing, while relevant, is "not dispositive." Kosakow v. New Rochelle Radiology Assocs., P.C., 274 F.3d 706, 735 (2d Cir. 2001); see also Harper v. Nat'l Kidney Found., No. 03-CV-6247, 2005 WL

43774, at *6 (W.D.N.Y. Jan. 10, 2005) (collecting cases).  And Judge McAndrews was only required to conduct a hearing if "on the papers before [him], a strong showing of selective enforcement, invidiously motivated, appear[ed]."  303 W. 42nd St. Corp. v. Klein, 46 N.Y.2d 686, 693, 416 N.Y.S.2d 219, 223, 389 N.E.2d 815, 819 (1979).  Further, Plaintiffs' statement that there was no "documentary proof" is disingenuous, as extensive evidence was submitted in support of and in opposition to the motion to dismiss.  (Kendric Decl. Ex. D, at 1.)

What is potentially an issue, however, is the fact that Mr. Thomas's criminal prosecution is still pending.  "Under New York law, appellate review plays a critical role in safeguarding the correctness of judgments, and collateral estoppel cannot be applied without first considering the availability of such review."  Johnson v. Watkins, 101 F.3d 792, 795 (2d Cir. 1996) (citing Malloy v. Trombley, 50 N.Y.2d 46, 51, 427 N.Y.S.2d 969, 405 N.E.2d 213 (1980)).  "If a party has not had an opportunity to appeal an adverse finding, then it has not a full and fair opportunity to litigate that issue."  Id. (citation omitted).  In the present case, if Mr. Thomas is acquitted of the criminal charges, he will not have an opportunity to appeal Judge McAndrews' decision on his motion to dismiss.  Cf. id. ("New York courts have held that facts determined in a pretrial suppression hearing cannot be given

conclusive effect against a defendant subsequently acquitted of the charges." (collecting cases)).  However, if he is convicted, he will be able to appeal Judge McAndrews' decision and, thus, will have a full and fair opportunity to litigate his equal protection claims in state court.

The Second Circuit instructs that the proper course of action here is to stay the proceeding pending the resolution of Mr. Thomas's criminal court prosecution.  See Temple of Lost Sheep Inc. v. Abrams, 930 F.2d 178, 184 (2d Cir. 1991); see also Thaler v. Casella, 960 F. Supp 691, 699-700 (S.D.N.Y. 1997).  However, before deciding to stay this action, the Court will address Defendants' other arguments to determine whether the Complaint or the Petition should be dismissed on other grounds.

## 2. Rooker-Feldman

The Rooker-Feldman doctrine applies to cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  Exxon Mobile Corp. v. Saudi Basic Indus., 544 U.S. 280, 284, 125 S. Ct. 1517, 1521-22, 161 L. Ed. 2d 454 (2005).  Among other requirements, to trigger application of the Rooker-Feldman bar, "'the plaintiff must complain[] of injuries caused by [a] state-court judgment.'"  Hoblock v. Albany Cnty. Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005) (emphasis

added) (citing Exxon Mobil, 544 U.S. at 284).  Under Rooker–
Feldman, "a party is not complaining of an injury 'caused by' a
state-court judgment when the exact injury of which the party
complains in federal court existed prior in time to the state-
court proceedings, and so could not have been 'caused by' those
proceedings."  McKithen v. Brown, 481 F.3d 89, 98 (2d Cir. 2007)
(where plaintiff sought redress in federal court "for an injury
that existed in its exact form prior to the state-court
judgment," his injury was not "'caused by' the state court;"
rather, the injury was "simply ratified [by], acquiesced . . . ,
or left unpunished" by the state court. (internal quotation
marks and citation omitted)).  Here, Mr. Thomas complains that
Defendants violated his constitutional rights by filing criminal
charges against him (and not against other similarly situated
homeowners) on account of his race.  Thus, the injury of which
Plaintiff complains existed prior in time to Judge McAndrews'
decision, which merely ratified the violations alleged here.
Thus, Rooker–Feldman is inapplicable.

       3.   Failure to State a Claim

          a.   Against Venditto, Frederick, and Ippolito

     Defendants argue that the claims against Venditto,
Frederick, and Ippolito must be dismissed because the Complaint
is devoid of any allegations that they were personally involved
in the alleged constitutional violation.  The Court agrees.

"'It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Colon, 58 F.3d at 873 (quoting Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)).   Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676.  Here, aside from four paragraphs that state where these defendants reside and where they are employed (Compl. ¶¶ 6-8, 11), they are not mentioned anywhere in the Complaint. Plaintiffs assert that "[D]efendants' argument is plainly erroneous since all three are included not only in those paragraphs, but [also in paragraphs] wherein the allegations are made against all defendants."   (Pls. Opp. 2 (citing Compl. ¶¶ 24-58).)   However, "[i]t is insufficient for the plaintiffs to rely on group pleading against [these defendants] without making specific factual allegations [against them]." Bertuglia v. City of N.Y., 839 F. Supp. 2d 703, 723 n.4 (S.D.N.Y. 2012).

Accordingly, Plaintiffs have failed to sufficiently plead the personal involvement of these defendants, and all claims against them are hereby DISMISSED.

b.   Against the Town

Defendants also argue that Plaintiffs have failed to plead a basis for municipal liability.   The Court agrees.   A

municipality may not be held liable under Section 1983 for
alleged unconstitutional actions committed by its employees
solely on the basis of respondeat superior. Monell, 436 U.S. at
691. Rather, "to hold a municipality liable in such an action,
a plaintiff is required to plead and prove three elements: (1)
an official policy or custom that (2) causes the plaintiff to be
subjected to (3) a denial of a constitutional right." Zahra v.
Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995) (internal
quotation marks and citation omitted). Although Plaintiffs
attempted to plead the existence of such a policy by stating in
the Complaint that "the defendant, TOWN, implemented or executed
an official policy, statement, ordinance, regulation or decision
through its officials" (Compl. ¶ 64), "[t]he mere
assertion . . . that a municipality has such a custom or policy
is insufficient in the absence of allegations of fact tending to
support, at least circumstantially, such an inference," Dwares
v. City of N.Y., 985 F.2d 94, 100 (2d Cir. 1993). Such
circumstantial evidence includes "evidence that the municipality
so failed to train its employees as to display a deliberate
indifference to the constitutional rights of those within its
jurisdiction, or evidence that the municipality had notice of
but repeatedly failed to make any meaningful investigation into
charges that its agents were violating citizens' constitutional
rights." DeCarlo v. Fry, 141 F.3d 56, 61-62 (2d Cir. 1998)

(internal quotation marks and citation omitted). The Complaint
here is devoid of any allegations from which the existence of a
municipal policy can be inferred. Accordingly, the claims
against the Town are hereby DISMISSED.

### c. Against Gioia

Defendants argue that the equal protection claims
against Defendant Gioia must be dismissed because: (1) to the
extent that he is being sued in his official capacity, the claim
is duplicative of the claims against the Town; (2) to the extent
that he is being sued in his individual capacity, he is entitled
to absolute prosecutorial immunity; and (3) Plaintiffs have
failed to adequately plead that similarly situated people were
treated differently and that such differential treatment was
motivated by race.

### i. Redundancy of Official Capacity Claims

Defendants argue that the equal protection claim
against Defendant Gioia in his official capacity must be
dismissed as duplicative of the Monell claim against the Town.
The Court agrees. Official-capacity suits "'generally represent
only another way of pleading an action against an entity of
which an officer is an agent,'" Kentucky v. Graham, 473 U.S.
159, 165-66, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985) (quoting
Monell, 436 U.S. at 690 n.55), and courts routinely dismiss
official-capacity claims where the plaintiff also sues the

municipality, see, e.g., Volpe v. Nassau Cnty., --- F. Supp. 2d
----, 2013 WL 28561, at *13 (E.D.N.Y. Jan. 3, 2013); Tsotesi v.
Bd. of Educ., 258 F. Supp. 2d 336, 338 n.10 (S.D.N.Y. 2003).
Accordingly, the equal protection claim against Defendant Gioia
in his official capacity is hereby DISMISSED.[9]

ii. Absolute Immunity

Absolute immunity extends to claims against government
officials in their official capacities that arise out of their
performing functions "analogous to those of a prosecutor."  Butz
v. Economou, 438 U.S. 478, 515, 98 S. Ct. 2894, 57 L. Ed. 2d 895
(1978); see also Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir.
2010).  In determining whether a government official is immune
from suit, "the courts are to apply a 'functional approach,'
examining 'the nature of the function performed, not the
identity of the actor who performed it.'"  Doe v. Phillips, 81
F.3d 1204, 1209 (2d Cir. 1996) (quoting Buckley v. Fitzsimmons,
509 U.S. 259, 269, 113 S. Ct. 2606, 125 L. Ed. 2d 209 (1993)).
The Supreme Court has held, for example, that the filing of a
criminal complaint is entitled to absolute immunity, see Imbler
v. Pachtman, 424 U.S. 409, 431, 96 S. Ct. 984, 47 L. Ed. 2d 128
(1976); see also Barr v. Abrams, 810 F.2d 358, 362 (2d Cir.
1987), whereas absolute immunity does not extend to functions

_____

[9] The Court notes that, as Plaintiffs have failed to adequately
plead Monell liability, this claim could also have been
dismissed for failure to state a claim.

that are typically performed by police officers or investigative agents, see, e.g., Kalina v. Fletcher, 522 U.S. 118, 129-30, 118 S. Ct. 502, 139 L. Ed. 2d 471 (1997) (holding that a prosecutor was not entitled to prosecutorial immunity for a sworn affidavit filed in support of an application for an arrest warrant, because the prosecutor was "perform[ing] an act that any competent witness might have performed"); Burns v. Reed, 500 U.S. 478, 493, 111 S. Ct. 1934, 114 L. Ed. 2d 547 (1991) (stating that a prosecutor was not entitled to prosecutorial immunity for advising the police in the investigative phase of a criminal case).

In the present case, the only allegation in the Complaint with respect to Defendant Gioia is that he "contacted the plaintiffs, warning them to cease their use of the subject premises as a two family." (Compl. ¶ 22.) While is it reasonable to infer that Defendant Gioia may have been involved in the initiation of the criminal prosecution against Mr. Thomas, it is unclear from the face of the Complaint whether his role was prosecutorial or investigative. Therefore, the Court cannot dismiss the claims against Defendant Gioia in his individual capacity on the grounds of prosecutorial immunity at this stage of the litigation.

### iii. Similarly Situated

Finally, Defendants argue that the equal protection claim against Defendant Gioia must be dismissed because it is based entirely upon "surmise and subjective belief." (Defs. Mot. 5.) The Court disagrees. As stated above, to state a claim for selective enforcement in violation of the Equal Protection Clause, a plaintiff must plead that (1) he was "treated differently from other similarly situated individuals," and (2) "such differential treatment was based on [an] impermissible consideration[] such as race." See Harlen, 273 F.3d at 499.

With respect to the first element, the Complaint asserts that, although "at least seven other homes" in Plaintiffs' neighborhood are being used illegally as multi-family homes, criminal charges have only been brought against Mr. Thomas. (Compl. ¶¶ 39-40, 42.) The Complaint further asserts that Plaintiffs' home has been used as a multi-family home, purportedly in contravention of the Town Code, since the 1940s, yet Mr. Thomas is the first owner to be prosecuted for violating the Town Code. (Compl. ¶¶ 31-32, 34.) Defendants argue that this is inadequate because the Complaint makes only "conclusory, nonspecific references" to these potential comparators. (Defs. Mot. 9.) The Court disagrees. Plaintiffs have specifically identified the prior owners of the Property,

as well as seven other homes in the vicinity that also have two mailboxes, two doorbells, and two electric meters. That Plaintiffs have not provided Defendants with the names and addresses of these individuals is inconsequential, as that degree of specificity is not required at this stage of the proceedings.

With respect to the second element, the Complaint asserts that each of the comparators was Caucasian, whereas Mr. Thomas is African American and Mrs. Thomas is Puerto Rican. (Compl. ¶¶ 20-21, 33, 41.) Thus, the Complaint alleges that Defendants' enforcement of the Town Code is racially motivated. (Compl. ¶ 48.) Defendants argue that this is insufficient because the "conclusion is not based on any facts developed from conducting interviews, or from reviewing the Building Department files on any of those other properties." (Defs. Mot. 6.) Again, however, such level of specificity is not required; Plaintiffs need not support the allegations in their Complaint with evidence at this stage of the proceeding.

Accordingly, to the extent that Defendants seek to dismiss the claims against Defendant Gioia in his individual capacity, the motion is DENIED.

B. Due Process

Although the Complaint clearly states that Plaintiffs are asserting claims under both the Equal Protection Clause and

the Due Process Clause of the Fourteenth Amendment, Defendants'
motion only interprets the Complaint as asserting equal
protection claims. (Defs. Mot. 12.) Plaintiffs assert in their
opposition that Defendants' argument "grows from
misunderstanding" (Pls. Opp. 4); however, nowhere do they state
that they are asserting distinct due process and equal
protection claims. Despite this lack of clarity, the Court
reads the Complaint as also asserting a claim for deprivation of
Plaintiffs' right to use the Property as a two-family home
without due process of law.[10] This claim, however, must be
dismissed as unripe.

It is well settled that "[t]o be justiciable,
plaintiffs' claims must be ripe for federal review," Thomas v.
City of N.Y., 143 F.3d 31, 34 (2d Cir. 1998), and the Court can
raise the issue of ripeness sua sponte, see United States v.
Fell, 360 F.3d 135, 139 (2d Cir. 2004). For a constitutional
claim asserted in the land-use context to be ripe, the plaintiff
must, inter alia, "obtain a final, definitive position as to how

---

[10] The Court does not read the Complaint as asserting a claim
that Mr. Thomas has not been afforded adequate process in the
state criminal proceeding because that proceeding is still
pending. See Cotton v. Jackson, 216 F.3d 1328, 1331 (11th Cir.
2000) ("[T]he state must have the opportunity to remedy the
procedural failings of its subdivisions and agencies in the
appropriate fora-agencies, review boards, and state courts
before being subjected to a claim alleging a procedural due
process violation." (internal quotation marks and citation
omitted)).

it could use the property from the entity charged with implementing the zoning regulations." Murphy v. New Milford Zoning Comm'n, 402 F.3d 342, 348 (2d Cir. 2005) (citing Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 186, 194-95, 105 S. Ct. 3108, 87 L. Ed. 2d 126 (1985)).[11]  In the present case, as Plaintiffs never requested a variance or applied for a permit to use the Property as a two-family home, their due process claims are not ripe and must be dismissed.  See Murphy, 402 F.3d at 348 (stating that the ripeness test "conditions federal review on a property owner submitting at least one meaningful application for a variance"); see also Goldfine v. Kelly, 80 F. Supp. 2d 153, 159 (S.D.N.Y. 2000) (In the land use context, "[i]n order to have a final decision, 'a development plan must be submitted, considered, and rejected by the governmental entity.'  Even where the plaintiff applies for approval of a subdivision plan and is rejected, a claim is not ripe until the plaintiff also seeks variances that would allow it to develop the property." (quoting Unity Ventures v. Lake Cnty., 841 F.2d 770, 774 (2d Cir. 1988)).

---

[11] Although announced in the context of a Fifth Amendment takings claim, this ripeness test has been extended by the Second Circuit to procedural due process claims challenging land-use restrictions.  See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88-89 (2d Cir. 2002).

C.  New York Common Law Claims

The remaining claims all arise under New York State law.  Defendants only argument in support of dismissing these claims is that the Court "may decline to exercise supplemental jurisdiction over a state law claim where the district court has dismissed all claims over which it has original jurisdiction." (Defs. Mot. 16 (internal quotation marks and citation omitted).) As the Court is not dismissing (but rather staying) Plaintiffs' equal protection claim against Defendant Gioia in his individual capacity, dismissal of Plaintiffs' state law claims on these grounds is inappropriate at this time.  Accordingly, Defendants' motion to dismiss the claims arising under state law is DENIED.

III. Plaintiff's Motion to Amend

Also pending before the Court is Plaintiffs' notice of motion to amend the Complaint.  (Docket Entry 33.)  Plaintiffs, however, have failed to submit a proposed amended complaint with their motion.  As "any motion to amend must attach the proposed amended complaint specifying the new claims and/or defendants [the plaintiff] intends to add," Ackermann v. N.Y.C. Dep't of Info. Tech. & Telecomms., No. 09-CV-2436, 2010 WL 1172625, at *1 (E.D.N.Y. Mar. 24, 2010), the Court DENIES Plaintiff's motion for failing to submit a proposed pleading.  See Smith v. Planas, 151 F.R.D. 547, 550 (S.D.N.Y. 1993) ("Where the proposed amended complaint does not accompany the motion to amend, . . . the

Court may deny the motion without prejudice." (citations omitted)); Schwasnick v. Fields, No. 08-CV-4759, 2010 WL 2679935, at *11 (E.D.N.Y. June 30, 2010) ("The court may also deny leave to amend where the Plaintiff[] fails to submit a proposed pleading and does not explain why." (citation omitted)); see also La Barbera v. Ferran Enters., Inc., No. 05-CV-2678, 2009 WL 367611, at *3 (E.D.N.Y. Feb. 10, 2009) (holding that the "[d]enial of the motion to amend [was] warranted by Plaintiffs' unexplained failure to submit a proposed pleading").

Nonetheless, the Second Circuit has stated that "the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Cuoco v. Mortisugu, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation marks and citation omitted); see also FED. R. CIV. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). Thus, the Court will not dismiss the equal protection claims against the Town and Venditto, Genova, and Ippolito (in their individual capacities) with prejudice. However, as the action is stayed pending resolution of Mr. Thomas's criminal court prosecution,[12] the Court will not grant Plaintiffs leave to file an amended complaint at this time.

---

[12] If Mr. Thomas is convicted, his equal protection claims will be barred by collateral estoppel and the Court will decline to extend jurisdiction over Plaintiffs' state law claims.

Rather, if and when the stay is lifted, Plaintiffs shall be permitted to file an amended complaint that pleads/repleads the following claims only: (i) their selective enforcement claims against Gioia, Venditto, Genova, and Ippolito in their individual capacities; (ii) their Monell claim against the Town arising out of the purported equal protection violation; and (iii) their state common law claims against all Defendants.

CONCLUSION

For the foregoing reasons, it is hereby ORDERED that:

1. Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. Plaintiffs' due process claims against all Defendants, and Plaintiffs' equal protection claims against the Town and Venditto, Genova, and Ippolito in their individual capacities are DISMISSED WITHOUT PREJUDICE, and the claims against Gioia, Venditto, Genova, and Ippolito in their official capacities are DISMISSED WITH PREJUDICE. The only claims remaining in the Complaint are Plaintiffs' equal protection and state law claims against Gioia in his individual capacity.

2. These remaining claims are STAYED, pending resolution of the criminal court action.

3. Plaintiffs' motion to amend is DENIED with leave to renew if the stay is lifted.

4. The Court's prior Order consolidating this action is VACATED, and the Petition (12-CV-0065) is sua sponte REMANDED

to state court because this Court lacks jurisdiction to grant
the relief Mr. Thomas seeks.

The Clerk of the Court is directed to remand case
number 12-CV-0065 to Nassau County Supreme Court.


                                    SO ORDERED.


                                    /s/ JOANNA SEYBERT
                                    Joanna Seybert, U.S.D.J.

Dated:      February   21  , 2013
            Central Islip, NY